Good morning, Your Honors. My name is Hector Chinchilla, and I represent the appellant here, Lazaro Vail-Diaz. Your Honors, we have asked the Court to take a look at this case again simply because we believe that error was committed at the first level of review, and then subsequently the BIA continued to confirm that error. I will be brief. We do not believe that substantial evidence supports the conclusions reached by either the immigration judge or the BIA. Specifically, the non-credibility or non-credible determination was based on what was the judge or counsel understood or paraphrased the evidence to be. One issue that the Court looked at was when Mr. Vail-Diaz became a member of the party, and the judge concludes, well, he conflicts with his comments in his declaration, but ignores the evidence at the record at page 179 where he explains what his involvement was. Specifically, in 97, he had become a member but didn't consider that active participation until 2001 or 2000 when he became really active in the activities of the party. So he explained his involvement at page 179, 176, and 177, but that nowhere makes it into the record or, excuse me, nowhere makes it into the decision. As you can tell from the record, there was serious, serious communication problems. The judge himself at one point in the record admits that he has problems understanding what is being said or what the evidence is, yet he decides to hold that against my client. He also quibbles, the judge originally quibbles about what is meant by he will be disappeared. That is the testimony, and he argues with the appellant by introducing the concept of murder. The testimony was I will be disappeared or I will be disappeared like the mayor, like the mayor, and there's a lot of misunderstanding as to what the testimony is. So in turn, the government counsel and the judge paraphrase and then they decide that that's the evidence. I submit that the evidence is what the testimony actually was from the respondent below. They also make a lot about that the mayor, well, who was he or what party did he belong to? The testimony from my client was that he supported the mayor and participated in his election, and what is ignored below is that he supported the mayor because the mayor was of indigenous origins and the mayor supported indigenous rights. And this one, you know, I think you have some good arguments about the assessment of the testimony. I think it, the way the I.J. looked at it was, you know, somewhat troublesome. However, you still have another hurdle to get over, don't you, and that is even if there was some past persecution, I think the BIA had a second prong, didn't they? They said there was no likelihood of future persecution. So we have to get past that, too, right? Yes, Your Honor, and I can address that. Okay. The immigration judge basically hanged his hat on the fact that country conditions had changed substantially, and he cites the Department of State country conditions But if you look at that report specifically, the substantial change that the judge uses to deny my client a remedy is basically that there was a department set up to look at the working conditions of the indigenous people. But the report at page 233 speaks about that department and confirms that the indigenous people comprised at that time 43 percent of the population and that there was substantial charges to a department that did not have a separate budget, only had four employees, and absolutely no resources to conduct any investigations of discrimination or any other type. You know, if that is substantial change, you know, I'm sorry, but I beg to differ with all due respect. That's like saying, my God, you know, you've suffered this huge gash, you're bleeding, and somebody gives you a small Band-Aid, that's substantial change. Therefore, you shouldn't fear. You fear the injury. So I think that that was ignored. The very evidence, the very evidence that the judge relied on to deny a remedy is to the contrary. What do you make of the BIA's reliance on the fact that your client went back to Guatemala four times after coming to the United States? As we have stated in our briefs, that shouldn't be held against him. This something, something drove him back to his country. That was the desire to live there peacefully, to watch his family. The record basically says or establishes that he was concerned about his family. He heard that there was something going on, so he went back and tried to make a go of it. And that is what we as a society want. We want people to be able to go back to their country to see if they can live in peace. But he could not. Well, I think we have your argument in hand. Do you want to save some time for rebuttal? Yes, sir. All right. Very good. We'll hear from the government. Good morning, Your Honors. Jonathan Robbins here on behalf of Eric Holder, the Respondent. With respect to the adverse credibility determination, certainly the immigration judge reasonably relied on numerous inconsistencies in the record to form the basis for that determination. But before I get to those inconsistencies, I just want to address the allegations. The inconsistencies seem to be, to me, to have mostly to do with the political aspect, not the indigenous aspect, right? Well, to be honest with you. And he seems to be relying more today on the indigenous aspect. True. But, again, his family continues to reside in Guatemala unharmed, and they, too, are indigenous. And certainly that was one of the bases that the immigration judge and the board talked about with respect to his potential fear of possible persecution if he ever went back to Guatemala. But I do want to address – it's in their brief. He didn't really talk about it today, this issue of the immigration judge bias and the potential problems with the interpreter and the translation. If you look at the record, the case had been continued a number of times. And the immigration judge, at the hearing where they were supposed to have the merits hearing, they discovered that the interpreter wasn't from the same region and didn't understand the same dialect as interpreter. And he continued the case again, even though it was another delay, specifically to get an interpreter that spoke the same dialect as the petitioner. And when that new hearing came and they had that interpreter, the government actually objected to that interpreter because that was the same interpreter that they had used to prepare his asylum application. And the immigration judge basically convinced the government to withdraw that objection. He questioned the interpreter and asked if he could be impartial. So the immigration judge wasn't biased at all. I mean, he diligently worked to make sure that a proper interpreter who spoke the same dialect as petitioner, the one that they themselves used to prepare the application, was there. So these allegations of mistranslation now are a bit thin. I mean, if you read the record, yes, certainly there are some indiscernible parts of the record. It is sort of a broken English translation in some parts, but not in the key parts where there are inconsistencies. And they haven't alleged what the mistranslations were that caused these inconsistencies. I mean, if you look at the inconsistencies, for example, they questioned petitioner with regard to the one alleged claim of persecution that he had. And he said that, oh, these people will disappear you like we did the mayor. And then they confronted him with evidence that showed that the mayor didn't die until two years later. And then he changed his testimony and said, oh, like we will disappear the mayor. And that's not a mistranslation. That's the petitioner getting caught after being confronted with evidence. I mean, there's these inconsistencies with regard to when he actually joined the Christian Democratic Party. His asylum application states 2000 to 2001. In his testimony, he said 1997. So, I mean, certainly you can come up with explanations after the fact to explain away discrepancies. But under the standard of review, does the record compel reversal? Is the only way the immigration judge could have looked at this evidence to say that this person was telling the truth? And I don't think you can say that given these inconsistencies. Again, I want to note that Petitioner and Your Honors mentioned this before. With respect to his claim of a well-founded fear of future persecution, if he were to be returned or a clear probability of future persecution were he returned to Guatemala, he's been back there four times, living there at various points for years at a time. His family continues to reside there unharmed. And, again, certainly with respect to the issue of the ministry being set up to help indigenous people, it's not a perfect ministry. It is, to some extent, a bit of a Band-Aid to some extent. But it is also indicative of progress on behalf of indigenous people there. And I think that's what the immigration judge was getting at. And certainly given the fact that his family resides there and that he's been back there numerous times, it's safe to say that he's not going to face persecution there. With regard to ñ are there any other questions with respect to any of the specific inconsistencies? Because there are certain ñ you can take your pick. There are a lot of inconsistencies in this record. I guess you're going to address the untimeliness of the petition or not? With respect to the untimeliness of the asylum application, he didn't file it until three years after his entry into the country, obviously well past the year deadline. During his testimony, he claimed that he had ñ an attorney had told him that he couldn't apply for asylum. It's sort of this vague claim. We don't even know if this is an attorney or an attorney. He never attempted to contact this person to comply with the Lozada requirements. In order to establish extraordinary circumstances ñ and, again, I'm putting aside the jurisdictional arguments because of Ramadan and whatnot. But, you know, extraordinary circumstances, you have to make some sort of attempt to establish extraordinary circumstances if you want an immigration judge to find that you've established extraordinary circumstances, excusing the untimeliness of an asylum application. Here there was nothing except this vague allegation. No attempt to contact this lawyer. And, in fact, if you look at the timing of it, he hadn't even joined the Christian Democratic Party when he had contacted this lawyer. So this would have been solely on an indigenous claim, which is somewhat a different claim than he's making now, which is a sort of conflated claim between indigenous and political party. So ñ but, you know, in order to establish extraordinary circumstances, you have to make some sort of showing. They didn't make that. It would seem relatively clear that that's ñ the board and immigration judge reasonably found that under those circumstances he didn't establish what he needed to establish. Again, with respect ñ unless there are any specific questions with regard to the inconsistencies in the record, I think that probably covers all the issues. Very well. Thank you for your argument. Any further questions? Thank you. Thank you very much for your time, Your Honors. Your Honors, just to briefly respond, on the family issue, there is no evidence in the record as to what is going on with the family. The judge at page 61 basically says, I presume that the family is okay. That issue wasn't explored. There's no evidence to support the judge's conclusion on that issue. Concerning the interpreter, we have no qualms that the judge used his best efforts to try to find somebody. No problems with that. Where we talk about bias is when the judge becomes an active participant in the hearing. Now, what's interesting about the interpreter, though, just to go back for a second, is that government vardeered the interpreter, judge vardeered the interpreter, but nobody ever asked the question, Mr. Raid, do you understand the questions that are being posed to you or the comments that are being made to you by the interpreter? That was not explored anywhere. So our bias is not in trying to get the interpreter. Our comment concerning bias is the act of participation. The judge basically paraphrases testimony and treats that as evidence. It's just like argument of counsel, Your Honors. My argument is not evidence. The evidence is in the record. As far as the untimely issue, we submit that the judge made a mistake in that regard simply because he treated the issue or he treated the requirement as a bright-line rule, did not consider whether there are exceptions or what constitutes the exception. That was not addressed. And as far as the nature of the application, in the record at pages 291 to 301, it is clear from the initial application that Mr. Raid was basing his claim on, one, his indigenous roots and, two, his participation in the political process in Guatemala. So that was there from the very beginning. It's in the record and it was not addressed. The focus was on supposedly the inconsistencies of political participation. This political group basically a party that supports the rights of indigenous people, other interlinked anyway. That is the evidence in the record, Your Honor, yes. All right. And we request that the matter be sent back, Your Honor, for further proceedings. Thank you for your arguments. Thank you. The case just heard will be submitted for decision. I thank both of you for your presentations.
judges: Restani, Hall, Thomas